IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH E. JACKSON, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:05-cv-00823 |
| | : | |
| v. | : | JUDGE ALGENON MARBLEY |
| | : | |
| JUDY THOMPSON, and CARNABY ASSOCIATION, LLC | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

### I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss by Defendants, Judy Thompson ("Thompson") and Carnaby Association, LLC ("Carnaby"). Defendants move to dismiss *pro se* Plaintiff's complaint pursuant to Federal Rule of 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the Court **GRANTS** Defendants' Motion to Dismiss.

### II. STATEMENT OF FACTS

On September 6, 2005, Plaintiff, Kenneth Jackson ("Plaintiff" or "Jackson") filed a complaint in federal court (the "Complaint"). Plaintiff's hand-written Complaint states the following:

> Refusal to rent apartment 5913 McNaughten to me based on false information and the fact before Judy Thompson obtained false information she never offered to show apartment to me, she asked what rent did I want to pay, $685.00 or $675.00 monthly. Her decision was made not to rent to me before she ever ran credit history or criminal background check.
> I applied to Carnaby Village in good faith based on the fact I thought it was optimal living situation, with access to interstate 270. Availability of shopping centers and eating establishments in walking distances. The fact it's located in a lower crime area.

> If I had a major criminal record I wouldn't have applied, knowing that a criminal background check would be ran.
> Base on Judy Thompson and Carnaby Ass., LLC d/b/a Carnaby Village, refusal to rent to me based on false information and not attempting to clarify their mistake with information that I provided to Carnaby Village. The irreparable damages and harm and the fact my life is still in jeopardy, I feel that $7,477,000.00 would be reasonable and fair remedy that I am seeking for discrimination and punitive damages.

*See* Complaint. Plaintiff also attached various documents to his Complaint, which he does not reference in the body of the Complaint. *See* Pl.'s Ex. 1. The documents arise from an earlier housing discrimination charge that Plaintiff filed with the Ohio Civil Rights Commission ("OCRC")[1], which the OCRC eventually dismissed.[2]

When Plaintiff filed his initial Complaint, he also filed a motion to appoint counsel. In considering Plaintiff's request, the magistrate judge found that Plaintiff had failed to show that he had exhausted his ability to hire private counsel. Thus, the magistrate judge ordered that Plaintiff: (1) contact the Columbus Bar Association Lawyer Referral Service within ten days of the order; (2) meet with one or more referred attorneys within thirty days of the order; and (3) advise the court in writing as to whether counsel has been retained within forty-five days of the order. [Doc. No. 3]. As of June 5, 2006, Plaintiff has still filed no written record pertaining to the magistrate judge's order and has still not retained counsel.

---

[1] The OCRC administers Chapter 4112 of the Ohio Revised Code, which prohibits discrimination in housing. *See* OHIO REV. CODE § 4112, *et seq*. A determination by the OCRC constitutes a final order of the Commission and is subject to judicial review. *Id*. Section 4112.06 of the Ohio Revised Code sets forth the right to obtain judicial review of the order in federal court, pursuant to Title VII of the Fair Housing Act of 1968, as well as the procedure to do so. *See id*. § 4112.06. Once the OCRC dismissed Plaintiff's claim, he timely filed his Complaint in federal court.

[2] The OCRC found that because Plaintiff had presented no evidence that similarly situated white applicants were treated more favorably by Defendants, he had failed to state a claim of housing discrimination. *See* Pl.'s Ex. 1.

On November 23, 2005, Defendants filed a motion to dismiss Plaintiff's claim. The matter has been fully briefed and is now ripe for decision.

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) Motion to Dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997).

A complaint should not be dismissed under Rule 12(b)(6) "'unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (quoting *Conley*, 355 U.S. at 47).

Nonetheless, this liberal standard of review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id*. (citations omitted). Finally, though courts afford *pro se* complaints a measure of leniency, the Sixth Circuit held that even with such cases, courts should not accept legal conclusions in unwarranted factual inferences. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 2003). *Pro se*

plaintiffs are not entitled to a lenient application of the substantive law of a claim. *See Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983).

### IV. ANALYSIS

Taken on its face, it is clear that the Complaint fails to provide Defendants with fair notice of Plaintiff's claim and the grounds upon which it rests. Plaintiff fails to set forth any legal authority, and the Complaint is devoid of any jurisdictional allegation that would provide the Court with subject matter jurisdiction over the action. Further, even assuming, *arguendo*, that Plaintiff has brought his action under Title VII of the Fair Housing Act, 42 U.S.C. § 3601, *et seq*., the Complaint still makes neither direct nor inferential allegations with respect to all the material elements necessary to sustain a recovery under that Act. Therefore, the Court finds that the Complaint itself fails to state a claim upon which relief can be granted.

The Court's inquiry cannot end there, however. Though Plaintiff's sparse discussion of the facts in the Complaint fails to provide the Court with insight into the nature of his claims, as discussed *supra*, Plaintiff has attached to his Complaint various documents relating to his previously dismissed OCRC housing discrimination claim. *See* Pl.'s Ex. 1.[3] The documents lay

---

[3]Plaintiff's Exhibit 1 describes, in more detail, the origins of Plaintiff's suit. According to Plaintiff, on February 26, 2004, Plaintiff telephoned Defendant Thompson, Property Manager at Carnaby Village Apartments (the "Property"), to inquire about renting an apartment there. The Property is owned by Defendant Carnaby. On March 1, 2004, Plaintiff arranged to visit the Property.

On March 2, 2004, Plaintiff visited the Property, filled out a rental application, and expressed an interest in moving as early as March 4, 2004. As part of the application process, Plaintiff provided proof of income, a copy of his driver's license, and a check for the security deposit, cleaning and application fees. As she does for all applicants, Thompson used the information to conduct a credit check and criminal records search for Plaintiff. Thompson states that Plaintiff's credit rating and income both qualified him to rent a unit.

Thompson used Vantage Data Solutions ("VDS") to retrieve Plaintiff's criminal history. The results of the criminal search revealed three "Kenneth Jacksons." The first "Kenneth

out a more thorough background of the circumstances underlying Plaintiff's claim. Defendants assert, however, that because those documents are not referenced in Plaintiff's Complaint, the Court should not consider them in its analysis. *See* Def.'s Reply at 2. Defendants' argument oversimplifies the pleading rules.

---

Jackson" was based out of Lucas County, Ohio, and had committed the crime of malicious entry. The second, "Kenneth R. Jackson," was based in Louisiana, and had committed a sexual battery. The third, "Kenneth E. Jackson," was based in Virginia, and had committed a sexual offense. Thompson alleges that because the VDS search did not provide photographs or physical descriptions of the offenders, she could not verify if any of the criminal "Kenneth Jacksons" was Plaintiff. The VDS search did show that both the Lucas County and the Virginia Kenneth Jacksons were black males. Plaintiff is a black male. Thompson subsequently called Plaintiff and notified him of the results of the VDS search, and Plaintiff emphatically denied that the criminal convictions were his.

On March 2, 2004, Thompson mailed Plaintiff a letter of denial. She informed him that she was rejecting his application because of the results of the VDS search, and she provided him with telephone numbers to use to obtain the disqualifying information. Further, Thompson refunded Plaintiff his application fees.

After Plaintiff's application was denied, Plaintiff contacted Thompson several times to refute the VDS search results. Plaintiff asked Thompson to contact the Urbana, Ohio Police Chief, Pat Wager, to verify his criminal history. On March 3, 2004, the Urbana, Ohio Police Department faxed Plaintiff's criminal report to Plaintiff. The report showed that Plaintiff had been issued a bench warrant for writing a bad check for $6.80 in September 1994, and Plaintiff admits to this charge.

On March 17, 2004, Plaintiff sent Thompson a copy of his criminal history record from the Ohio Bureau of Criminal Identification and Investigation. The report showed that in February 1986, Plaintiff had been charged with driving while intoxicated. In meeting with Property staff, Plaintiff agreed that these convictions existed, but noted that the crimes did not mirror the sexual offenses, or violent crimes that Thompson had accused him of committing. Plaintiff also asserts that he has never been to Lucas County, Ohio, Louisiana, or Virginia, and that he lived with his mother in Urbana, Ohio from May 1994 through March 2004. All of Plaintiff's witnesses interviewed attested that Plaintiff never resided or visited Lucas County, Ohio, Louisiana, or Virginia, and that Plaintiff never committed crimes of either a sexually offensive or a violent nature.

Plaintiff asserts that in continuing to refuse to rent to him even after he had "cleared up" the confusion presented by the VDS search, Defendants clearly discriminated against him on account of his race. Defendants, however, argue that Plaintiff failed to provide any information to contradict the results of the VDS search. Further, it is the policy of Carnaby Village Apartments to reject an applicant with prior arrests pertaining to drug abuse, drug solicitation, burglary, or receipt of stolen property. *See* Pl.'s Ex. 1.

As stated by the district court, "as a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56." *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999); *see Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). There are, however, exceptions to this general rule. *Weiner*, 108 F.3d at 88. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See id.* at 89. Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. *See, e.g., Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997) (public records); *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996) (judicial notice); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir.1993) (letter decisions of governmental agencies). Further, if extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and *add nothing new*," they may be considered without converting the motion to one for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997) (emphasis added); *see also Delahunt v. Cytodyne Techs.,* 241 F. Supp. 2d 827, 831-32 (S.D. Ohio 2003).

It is undisputed that Plaintiff does not reference the Exhibit 1 documents in the body of his Complaint. Further, the lengthy and detailed documents do far more than "fill in the blanks" of Plaintiff's exceedingly sparse Complaint. Therefore, this Court finds that it may not consider Plaintiff's attached documents without converting Defendants' Motion to a motion for summary judgment.

Before a motion to dismiss can be converted into a motion for summary judgment, the nonmovant must receive adequate notice that the court intends to treat the motion as one for summary judgment and a reasonable opportunity to present material in opposition.  *See* 49 C.J.S. Judgments § 258 (June 2005) ("Treatment of other motions as motion for summary judgment – Notice and opportunity to respond").  The purpose of providing parties with such notice is to afford them a reasonable opportunity to demonstrate whether a genuine issue of fact exists.  *Id*.  In this case, the Court finds that, even supplementing Plaintiff's Complaint with the extrinsic OCRC documents, Plaintiff's Complaint still fails to state a legal claim and does not provide factual support for its assertions.  Therefore, this Court declines to exercise the option of converting Defendants' Motion to Dismiss into one for summary judgment, and finds dismissal of Plaintiff's claims appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.  The case is hereby dismissed.

    **IT IS SO ORDERED.**


    s/Algenon L. Marbley
    **ALGENON L. MARBLEY**
    **UNITED STATES DISTRICT JUDGE**

**DATED: June 20, 2006**